*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 15, 2026
12:25 PM

Plaintiff-Appellee,

v

No. 369401; 376530
Roscommon Circuit Court
LC No. 22-008849-FC

TROY DAVID HOLDER,

Defendant-Appellant.

Before: GADOLA, C.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) and (2)(b) (victim under 13 years old and defendant 17 years or older), one count of CSC-I, MCL 750.520b(1)(b) (victim between 13 and 16 years old, defendant member of household), one count of CSC-I, MCL 750.520b(1)(a) (victim under 13 years old), and four counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (victim under 13 years old); MCL 750.520c(1)(b) (victim between 13 and 16 years old, defendant member of household). On appeal, defendant asserts that his trial counsel was ineffective, that the trial court erred when it assessed 25 points for Offense Variable (OV) 11 for three of his CSC-II counts, and that the trial court erred when it imposed consecutive sentences.[1] We affirm defendant's convictions but vacate his sentences and remand for resentencing.

---

[1] In Docket No. 369401, defendant filed his first claim of appeal challenging his convictions and sentences. In the trial court, he filed a motion for a new trial and for resentencing. Although the motion for new trial was denied, his request for resentencing was granted. In Docket No. 376530, defendant filed his claim of appeal following resentencing. We consolidated the claims of appeal to advance the efficient administration of justice. *People v Holder*, unpublished order of the Court of Appeals, entered July 30, 2025 (Docket Nos. 369401 and 376530).

-1-

# I. FACTUAL AND PROCEDURAL HISTORY

AT, the victim, met defendant, her stepfather, after he began dating her mother, a military veteran. The victim's mother and defendant married. Between the ages of 4 and 14, the victim alleged that she was repeatedly sexually assaulted by defendant. The family ultimately moved to Gerrish Township when the victim was approximately 9 years old. In that family home, the victim shared a room with defendant's daughter from another relationship who was approximately 3 years younger than the victim. Defendant's son, also from another relationship, and the victim's younger brother, the product of the couple's marriage, lived in the home and shared another bedroom. The victim testified at trial that defendant would repeatedly come into her room at night and touch her genitals and breasts. The victim stated that the abuse occurred on a weekly basis and generally happened more than once a week.

During some instances, defendant would digitally penetrate the victim, and there were also a few occasions in which defendant made the victim touch his penis. The victim testified that defendant's daughter was a heavy sleeper and did not witness the abuse. But on one occasion, defendant's daughter woke up because she sat up and stopped snoring, and the victim heard defendant hide in the closet. The victim identified defendant as the perpetrator because she could tell from the light off the television or she would half open her eyes without it being noticeable. No conversation occurred during the sexual assaults.

Regarding the instances where defendant made the victim touch his unclothed penis, he used his hand to guide the victim's hand onto his erect penis. When asked to describe how defendant's penis felt, the victim testified that she did not know how to explain it. When given suggestions, the victim testified that defendant's penis was "in between" hard and soft and felt moisturized.

Eventually, the victim told a teenage friend about the sexual abuse and also told her boyfriend. The victim's boyfriend relayed the abuse information to defendant's eldest daughter, who did not reside in the family home. In late August 2021, the eldest daughter advised the victim's mother that the victim had something to discuss. After the victim disclosed the sexual assaults to her mother, no immediate action was taken to stop the abuse. The victim's mother testified that she was torn between two people that she loved. She initially grabbed a bat and hit trees in the woods. The victim's mother placed two cameras in the victim's room but they did not record. At the end of November 2021, the victim's mother took her children and left the family home. Initially, defendant attempted to prevent the victim from leaving the home. The victim denied fabricating the claims of sexual abuse and denied raising the allegations to aid her mother in a custody dispute.

On cross-examination, the victim was asked about her performance of oral sex on defendant. The victim denied that occurred and explained that her hand was placed on defendant's penis an estimated 5 to 7 times. Defense counsel indicated that he misheard the victim and never questioned her about any special characteristics of defendant's genitalia.

The victim's mother acknowledged that over the years she suffered from mental health issues and was prescribed medication through veteran's affairs that had an adverse impact on her. She believed that she was over medicated, and at times, stopped taking her medications. The

victim's mother acknowledged that Children's Protective Services became involved, and defendant took care of the children. She struggled with screaming and crying children, considered smothering defendant's youngest daughter with a pillow, and was diagnosed with schizophrenia. Ultimately, the victim's mother disagreed with that diagnosis, found an independent doctor, and benefited from her treatment. The victim's mother acknowledged that the couple's relationship could be chaotic, and they argued. After the victim's mother took her children and left the family home, she filed for divorce in December 2021. The couple exchanged text messages about the custody of their son. The victim's mother did not want defendant to have shared custody in light of her knowledge of defendant's assaults upon the victim. The victim's mother also was not questioned about any unique characteristics of defendant's penis.

Defendant acknowledged that he entered the victim's bedroom to turn off the television but denied checking to see whether the victim had wet the bed. He also testified that the couple had a volatile relationship. In the fall of 2021, the couple separated and were dividing up their possessions. Defendant proposed a "50/50" custody arrangement of their son, but the victim's mother refused. Defendant also testified that he had his penis pierced with a big hoop at the top when he was 21 years old. On cross-examination, he stated that he had a small penis and any touch would reveal the piercing.

At trial, defendant's son testified that he did not see defendant enter the victim's bedroom at night.[2] Additionally, defendant's daughter gave unclear testimony about whether she was a light sleeper. And a medical report of the victim's visit to a physician was introduced at trial without objection. The treating physician testified about her treatment of the victim but the victim was unable to submit to a physical examination.

Defendant was convicted of eight counts of CSC and sentenced in November 2023. He subsequently moved for a resentencing and for a *Ginther*[3] hearing. The trial court granted resentencing but denied the *Ginther* hearing. Defendant was resentenced in May 2025, as a second-offense habitual offender, to serve 300 months to 45 years' imprisonment for counts one and two, 225 months to 45 years' imprisonment for count three, 262 months' to 45 years' imprisonment for count four, 125 to 270 months' imprisonment for counts five, six, and seven, and 107 to 270 months' imprisonment for count eight. When the trial court resentenced defendant, it assessed OV 11 at 25 points for three of defendant's convictions for CSC-II. The trial court determined that the score was warranted because defendant sexually penetrated the victim as part of the conduct for those CSC-II convictions.

The sentence for count 1 was consecutive to the sentence for count 5 and concurrent with all other sentences, the sentence for count 2 was consecutive to the sentence for count 6 and concurrent with all other sentences, the sentence for count 3 was consecutive to the sentence for

---

[2] The victim testified to experiencing cold during the sexual abuse. In contrast, defendant's son testified that the home was heated with wood and was very warm. The parties did not clarify with the victim whether her temperature description pertained to the sexual incidents or her physical response as opposed to the home conditions.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1972).

count 7 and concurrent with all other sentences, and all other sentences were concurrent. From these sentences, defendant appeals.

## II. ANALYSIS

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that trial counsel was ineffective. We disagree.

Defendant preserved the challenge to the effective assistance of counsel by moving for a new trial or for a *Ginther* hearing. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). When a *Ginther* hearing is not held, appellate review is limited to mistakes apparent on the record. *Id*.

The Michigan and United States Constitutions guarantee criminal defendants the right to be represented by an attorney. Const 1963, art 1, § 20; US Const, Am VI. A criminal defendant is entitled to the effective assistance of counsel. *People v Otto*, 348 Mich App 221, 231; 18 NW3d 336 (2023). "A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of counsel." *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). The defendant must first demonstrate "that counsel's performance fell below an objective standard of reasonableness. In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *Id*. at 290. In examining defense counsel's performance, "the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Second, the defendant must show that, "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694.

"Generally, whether a defendant had the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012) (quotation marks and citation omitted). "This Court reviews findings of fact for clear error and questions of law de novo." *Id*. The defendant bears the burden of demonstrating the factual predicate for his claim of ineffective assistance of counsel. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). When claiming ineffective assistance premised on defense counsel's unpreparedness, there is a requirement that a defendant show prejudice resulting from this alleged lack of preparation. *People v Caballero*, 184 Mich App 636, 640; 459 NW2d 80 (1990). This showing can be made through evidence of an investigation or affidavits that would reveal information beneficial to the defendant. *Id*. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). To succeed on a claim of ineffective assistance premised on the failure to call witnesses, a defendant need not demonstrate a deprivation of a substantial defense. *People v Jurewicz*, 506 Mich 914, 915; 948 NW2d 448 (2020). Rather, the standard applicable to ineffective assistance for the failure to call witnesses is the same for all other such ineffective assistance of counsel claims; it involves consideration of whether counsel's

performance fell below an objective standard of reasonableness and, but for counsel's deficient performance, whether there is a reasonable probability that the outcome would have been different. *Id*.

"There is a presumption that counsel was effective, and a defendant must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015). This Court will not substitute its judgment on matters of trial strategy and will not assess counsel's performance with the benefit of hindsight. *Id*. "Failure to raise a futile objection or advance a meritless argument does not constitute ineffective assistance of counsel," and "failing to raise an objection may be consistent with a sound trial strategy." *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021).

## 1. THE MEDICAL REPORT

Defendant contends that trial counsel was ineffective for failing to object to the introduction of a medical report summarizing the victim's visit with a physician after disclosing the sexual abuse. We disagree.

Under hearsay exception MRE 803(4), "Statements made for the purpose of medical treatment are admissible . . . if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care." *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011). The declarant need not sustain an immediately apparent physical injury for the exception to apply. *Id*. at 215. "Particularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *Id*.

In this case, the victim's statements to the physician were made for the purpose of obtaining medical treatment. The physician reviewed the victim's history and symptoms as part of an initial meeting. The victim was unable to undergo a physical examination. In light of the victim's report, the physician recommended counseling and the completion of the physical exam at a later time. The victim's disclosure of the manner in which she was abused was necessary for medical diagnosis and treatment. It would aid in identifying any potential injury, any transmissible infection, and the risk of pregnancy. Our Supreme Court has recognized that the identity of the assailant may also be necessary in order to diagnose and treat the psychological trauma experienced by the victim. *People v Meeboer*, 439 Mich 310, 328-329; 484 NW2d 621 (1992). In this case, the victim's meeting with the physician occurred within three weeks of her departure from the family home where she lived with defendant. It did not occur years later when the need for medical diagnosis and treatment was unlikely. See e.g., *People v Shaw*, 315 Mich App 668, 674-675; 892 NW2d 15 (2016) (statements made to a doctor unnecessary for medical diagnosis and treatment because the victim made her disclosures to the doctor seven years after the last alleged instance of abuse and after seeing another physician for gynecological care). In light of the short period between the removal from defendant's home and the medical exam, an objection to the medical report would have been futile. The failure to make a futile objection does not render trial counsel ineffective. *Isrow*, 339 Mich App at 532.

Additionally, the report did not improperly vouch for the victim. An examining physician who is qualified to treat sexual assault complainants may opine as to whether the complainant has been sexually assaulted if the opinion is premised on physical findings and the complainant's medical history. *People v Thorpe*, 504 Mich 230, 258-259; 934 NW2d 693 (2019). The physician may not opine on whether the complainant was sexually assaulted based only on a belief that the complainant has been honest. *Id*. at 255.

The victim presented to the physician for a claim of possible sexual abuse. The physician was unable to complete a physical examination of the victim and did not render an opinion in the report about whether the victim's disclosures of sexual abuse were truthful. Rather, the report only referenced "suspected" child sexual abuse. The physician did not reach a conclusion regarding the truth of the victim's statements. The physician's report did not vouch for the victim's veracity. Accordingly, trial counsel was not ineffective for failing to object to the physician's report. *Isrow*, 339 Mich App at 532.

## 2. DEFENDANT'S PIERCING

Defendant further argues that trial counsel was ineffective for failing to introduce corroborating evidence of defendant's penile piercing because it would have impeached the victim's testimony that did not mention it. We disagree.

During direct examination, the victim was questioned regarding the specific sexual acts that occurred. The victim identified defendant as the perpetrator from the light emitted off the television or from when she opened her eyes just enough to determine her assailant. There was no testimony that the victim spoke or opened her eyes during the sexual assaults. Moreover, when the victim was questioned about defendant's penis, the victim indicated she was unsure of how to answer. When specifically asked if the penis was soft or hard, the victim testified that it was "in between." There is no indication that the victim was asked whether defendant's penis had any specific identifying characteristics such as a piercing.

When the victim was cross-examined, defense counsel inquired of acts about oral sex performed upon defendant. The victim noted that she had not testified to any such acts, and defense counsel indicated that he misheard the testimony. Rather, the victim testified that her hand was placed on defendant's penis between 5 and 7 times. She was not questioned about any piercing or other characteristic. In closing argument, defense counsel asserted that the victim was not truthful because defendant undisputedly testified that he had "a small penis with a hoop ring on it that is a piercing." Defense counsel argued that the victim claimed to touch defendant's penis between 5 and 7 occasions yet "never noticed it."[4] Additionally, defense counsel failed to question

---

[4] In addition to challenging the victim's truthfulness in light of the failure to identify a piercing, defense counsel acknowledged that he did not ask the victim's mother about the piercing. Defense counsel also noted that he did not ask defendant to disrobe in the jury room for them to "look at it." Thus, defense counsel was aware of corroborating evidence but chose not to present it. "[D]ecisions regarding how to question a witness and conduct cross-examination is a matter of trial strategy." *People v Thurmond*, 348 Mich App 715, 743; 20 NW3d 311 (2023).

the victim's mother about any piercing. Defense counsel was aware of corroborating proofs regarding the piercing but chose not to admit the evidence.

On appeal, defendant submitted affidavits from two previous romantic partners who would have testified regarding this piercing. However, these affidavits merely opine that the piercing was visible and do not delineate the circumstances under which the piercing would have been felt. Again, the victim testified that she merely opened her eyes enough or used the television lighting to determine defendant was her assailant. There was no testimony that she visually saw or examined defendant's genitalia. And the victim was not questioned about such a characteristic. The evidence of a visual piercing as proffered in the affidavits fail to establish that the victim lied or could have been impeached by such an omission. The affidavits also fail to demonstrate that counsel's performance fell before an objective standard of reasonableness and that, but for the deficient performance, there is a reasonable probability that the outcome would have been different. *Jurewicz*, 506 Mich at 915. Accordingly, defendant has not met his burden of showing ineffective assistance of counsel. *Douglas*, 496 Mich at 592.

### 3. MOTIVE TO FABRICATE ALLEGATIONS

Defendant next asserts that trial counsel was ineffective for failing to question the victim about possible motives to make false allegations against defendant. We disagree.

Defendant alleges that the victim may have been motivated to make false allegations against him due to disagreements with him about her boyfriend, chores, and what clothing she was allowed to wear. Even assuming these disagreements existed, it was reasonable for trial counsel not to cross-examine the victim about these motives for making false claims of abuse. "[D]ecisions regarding how to question a witness and conduct cross-examination is a matter of trial strategy." *People v Thurmond*, 348 Mich App 715, 743; 20 NW3d 311 (2023). A reasonably competent attorney may decline to cross-examine a witness on certain topics in order to avoid the appearance of bullying the witness or to avoid emphasizing damaging testimony. See *People v Gioglio (On Remand)*, 296 Mich App 12, 26; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012). The victim was 16 years old during the trial, and she started crying near the beginning of direct examination. Questioning the victim about whether she made up the allegations against defendant due to her anger at him over relatively minor disagreements could easily create the appearance of bullying the witness, which a reasonable attorney may opt to avoid.

Furthermore, defense counsel did elicit evidence of a possible motive for the victim to make false allegations. He questioned the victim's mother, who was married to defendant before his arrest, about her divorce and custody dispute with defendant. Specifically, defense counsel inquired if she sought full custody of their son and if she texted defendant that, "I guess this is going to get expensive." Defendant also testified that there was a custody dispute between them and that the victim's mother referenced the cost of a custody dispute. Defense counsel expressly argued that this custody dispute led to the fabrication of abuse allegations. It was a reasonable strategic decision to pursue the theory that the sexual abuse allegations were fabricated to gain an advantage in the custody dispute in light of the pending divorce and supporting text message. Defense counsel's pursuit of this theory was not constitutionally deficient.

## B. *GINTHER* HEARING

Defendant additionally argues that he is entitled to a *Ginther* hearing to develop a record regarding the above claims of ineffective assistance of counsel. A trial court's decision whether to hold an evidentiary hearing is reviewed for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. at 217. The trial court did not err when it denied defendant's request for a *Ginther* hearing.

A *Ginther* hearing is an evidentiary hearing where a defendant who wishes to advance a claim of ineffective assistance of counsel premised on facts not in the record may establish a record supporting the claim. See *Ginther*, 390 Mich at 443. To be entitled to a *Ginther* hearing, a defendant must set forth "additional facts that would require development of a record to determine if defense counsel was ineffective." *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007). Because there was sufficient record evidence to evaluate the alleged claims of error, the trial court did not abuse its discretion by denying defendant's request.

## C. DEFENDANT'S SENTENCE

Defendant next alleges that his sentence was invalid because for three counts, OV 11 was improperly assessed at 25 points, and because the trial court imposed unlawful consecutive sentences. We agree.

### 1. OV 11

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. "A scoring decision is not clearly erroneous if the record contains any evidence in support of the decision." *People v Johnson*, 298 Mich App 128, 130-131; 826 NW2d 170 (2012) (quotation marks and citation omitted).

"A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *Johnson*, 298 Mich App at 131. "[If] a defendant has effectively challenged an adverse factual assertion contained in the presentence report or any other controverted issues of fact relevant to the sentencing decision, the prosecution must prove by a preponderance of the evidence that the facts are as asserted." *Id*.

OV 11 is described in MCL 777.41:

(1) Offense variable 11 is criminal sexual penetration. Score offense variable 11 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) Two or more criminal sexual penetrations occurred……..50 points

(b) One criminal sexual penetration occurred………………25 points

(c) No criminal sexual penetration occurred…………….....0 points

(2) All of the following apply to scoring offense variable 11:

(a) Score all sexual penetrations of the victim by the offender arising out of the sentencing offense.

(b) Multiple sexual penetrations of the victim by the offender extending beyond the sentencing offense may be scored in offense variables 12 or 13.

(c) Do not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense.

"Vaginal penetration, fellatio, and cunnilingus are considered separate sexual penetrations when scoring OV 11 under MCL 777.41." *Johnson*, 298 Mich App at 132. "Also, the Michigan Supreme Court has defined 'arising out of,' as used in MCL 777.41, as something that springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen." *Id*. (quotation marks and citation omitted).

At defendant's resentencing, the trial court assessed 25 points for OV 11 for counts five through seven based on count one correlating with count five, count two correlating with count six, and count three correlating with count seven. First, the parties agree that the trial court erred when it assessed 25 points for OV 11 on count six because the trial court improperly held that the penetration that was the basis of count two (defendant touching the victim's genitals and breasts and performing oral sex on the victim when she was between the ages of 9 and 11), arose out of the conduct for count six, which was defendant coercing the victim to touch his penis when she was 10 or 11 years old. The victim did not testify about any penetration or oral sex occurring when defendant made her touch his penis during the offense that formed the basis of count six. Accordingly, count two could not have arisen out of count six, and the trial court erred in assessing 25 points for OV 11 on count six.

For count five, OV 11 was assessed at 25 points on the basis of count one arising out of the sentencing offense. Count one was based on defendant digitally penetrating the victim when she was 11 or 12 years old and count five was based on defendant touching the outside of her genitals and her breasts when she was between 11 and 13 years old. The victim testified that her sister was home during the commission of count five and expressly denied any penetration occurring. The victim also testified that her sister was not home when count one occurred. Therefore, count one could not have arisen out of count five, and the trial court erred when it assessed 25 points for OV 11 for count five.

For count seven, the trial court assessed 25 points for OV 11 on the basis of count three arising out of the sentencing offense. Count seven was based on defendant touching the victim's

external genitalia[5] and breasts, and count three was based on defendant digitally penetrating the victim when she was 12 or 13 years old. The victim testified specifically that defendant touched the "outer part of [her] vagina" during the conduct that formed the basis for count seven. Thus, it does not appear that any penetration occurred. Accordingly, the trial court erred when it assessed 25 points for OV 11 for count seven.

"Where a scoring error does not alter the appropriate guidelines range, resentencing is not required." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). At his resentencing, the trial court assessed defendant a total OV score of 75 points for each of counts five through seven, which put him at OV Level VI for each count. Because the correct assessment for OV 11 is zero points for counts five, six, and seven, the trial court should have assessed only 50 points, resulting in an OV Level of V. MCL 777.64. Accordingly, defendant is entitled to resentencing.

## 2. CONSECUTIVE SENTENCES

Lastly, defendant argues that the trial court erred when it ordered consecutive sentencing for some of his sentences. A trial court's decision to impose a discretionary consecutive sentence is reviewed for an abuse of discretion. *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Hawkins*, 349 Mich App 271, 274; 27 NW3d 641 (2023) (quotation marks and citation omitted).

"Absent statutory authority for imposing a consecutive sentence, it is the rule in this state to impose concurrent sentences[.]" *People v Sawyer*, 410 Mich 531, 534; 302 NW2d 534 (1981). Under MCL 750.520b(3), "[t]he court may order a term of imprisonment imposed [for a first-degree CSC conviction] to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction."

"[A]n ongoing course of sexually abusive conduct involving episodes of assault does not in and of itself render the crimes part of the same transaction." *People v Bailey*, 310 Mich App 703, 725; 873 NW2d 855 (2015). "For multiple penetrations to be considered as part of the same transaction, they must be part of a continuous time sequence, not merely part of a continuous course of conduct." *Id.* (quotation marks and citation omitted). Penetrations that "immediately follow[]" each other are part of a continuous time sequence. See *People v Ryan*, 295 Mich App 388, 403; 819 NW2d 55 (2012).

The court ordered consecutive sentences for counts one and five, counts two and six, and counts three and seven, on the basis that these offenses were all parts of single incidents. However, as discussed, the evidence presented at trial indicates that those pairs of offenses occurred at different times from each other and were not part of the same transaction. Count one was based

---

[5] The degrees of CSC differentiate between sexual acts occurring on the body surface, and those involving intrusion into body cavities, including genital openings, however slight. *People v Bristol*, 115 Mich App 236, 238; 320 NW2d 229 (1981). At trial, the prosecutor summarized the victim's testimony and argued to the jury that count seven reflected a touching of the outside of the vaginal opening, not a digital penetration.

on defendant's digital penetration of the victim when she was 11 or 12 years old; count five was based on defendant touching the victim's breasts and external genitalia when she was between 11 and 13 years old. The victim testified that her sister was home during the commission of count five but not home during the commission of count one, so the two offenses cannot have been part of the same transaction. The trial court therefore erred when it ordered consecutive sentences for counts one and five. Count two was based on defendant touching the victim's genitals and breasts and performing oral sex on her when she was between 9 and 11. Count six was based on defendant making the victim touch his penis when she was 10 or 11, and the victim did not testify that any penetration occurred. The testimony indicates that these two offenses were part of different incidents. Finally, count three was based on defendant digitally penetrating the victim when she was 12 or 13 years old, and count seven was based on defendant touching the victim's external genitalia and breasts without penetrating her.[6] The victim testified that there was no penetration during the offense that was the basis for count seven, so counts three and seven were not part of the same transaction. Because these pairs of offenses were not part of the same transaction, the trial court erred when it ordered consecutive sentences. Defendant is entitled to resentencing.[7]

We affirm defendant's convictions but vacate his sentence and remand for resentencing. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Michael J. Riordan
/s/ Anica Letica

---

[6] See footnote 7.

[7] In light of our disposition of these issues, we do not address defendant's ineffective assistance of counsel claims pertaining to sentencing.